UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA A. RICHMOND, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 338 |
| | ) | |
| v. | ) | Magistrate Judge M. David Weisman |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Patricia A. Richmond brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration Commissioner's decision denying her application for benefits. For the reasons set forth below, the Court reverses the Commissioner's decision.

**Background**

Plaintiff applied for benefits on June 9, 2009, alleging a disability onset date of February 9, 2009. (R. 170.) Her application was denied initially, on reconsideration, and by an Administrative Law Judge ("ALJ") in a decision dated April 13, 2011. (R. 38-50.) The Appeals Council declined to review the decision (R. 1-3), and plaintiff appealed to this Court, which remanded the case on May 16, 2013. (R. 651-56, 662.) The ALJ held a second hearing and again denied plaintiff's claims in a decision dated October 13, 2015. (R. 520-40.) The Appeals Council declined to review the decision (R. 508-11), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four. 20 C.F.R. § 404.1560(c)(2); *Zurawski*, 245 F.3d at 886. If that burden is met, at step five, the burden shifts to the Commissioner to establish that the claimant is capable of performing work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 522.) At step two, the ALJ determined that plaintiff has the severe impairments of "disc space narrowing and facet arthropathy[1] at the L5-S1 level in the lumbar spine; and status-post cervical fusion of the C6-7 level with minimal to mild multilevel degenerative changes." (R. 523.) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. (R. 526-27.) At step four, the ALJ found that, from February 9, 2009 through December 31, 2011, plaintiff was unable to perform any past relevant work but had the residual functional capacity ("RFC") to perform sedentary work, and as of January 1, 2012, she had the RFC to perform light work, including her past relevant work as a customer service manager, and thus is not disabled. (R. 527, 535-36, 539-40.)

Plaintiff argues that the ALJ improperly concluded that plaintiff's depression had resolved in 2009:

> While the evidence shows signs of depression in August and September 2009 . . . requiring a prescription for Lexapro, the subsequently submitted evidence did not show signs of depression, or further treatment of this condition; for example, at the February 2010 internal medicine consultative examination, the claimant was alert and oriented times three, in no acute distress and cooperative, and the claimant's records from Access did not make a mention of a continuing prescription for Lexapro.

(R. 524) (citations omitted). But, as plaintiff points out, the February 2010 consultative exam was a physical, not a psychological, evaluation. (*See* R. 375-82.) Thus, the exam report's silence with respect to plaintiff's mental impairment does not support the ALJ's conclusion that plaintiff's depression had ceased. Nor do plaintiff's medical records, which do not evidence mental health treatment, but do show that plaintiff reported having depression to other medical providers in 2010 and was still taking the anti-depressant Lexapro in 2011. (*See* R. 400, 439-41,

---

[1]Arthropathy is joint disease. *Arthropathy*, Dorland's Illustrated Medical Dictionary (32 ed. 2012).

443, 446, 451-53, 474-76, 488.) Given this evidence, the agency reviewer's 2009 opinion that plaintiff could only "sustain simple repetitive tasks" and "relate to others on at least a brief and superficial basis" (R. 346), a second agency reviewer's affirmation of the first reviewer's opinion (R. 385), the lack of any subsequent medical opinion that plaintiff's depression had abated, and the ALJ's failure to determine whether finances played a role in plaintiff's failure to seek mental health treatment,[2] the ALJ's conclusion that plaintiff's depression ended in 2009 is not supported by substantial evidence.[3]

Plaintiff also contends that the record does not support the ALJ's conclusion that plaintiff's physical condition improved in 2012. The record shows that, since 2012, plaintiff has worked Monday through Friday from 9 a.m. to 2 p.m. as a caretaker for an elderly woman, a job that requires her to cook, do laundry and housework, go grocery shopping, and accompany her client to doctor's appointments. (R. 593-94, 602-04, 617.) It also shows that plaintiff does her own household chores and that "her neck does not bother her anymore." (R. 605, 612, 841.) However, there is also evidence that plaintiff only went back to work because she "was on the verge of getting evicted," she limits her work to twenty-five hours per week, takes breaks during her workday because of pain, can only stand/walk for two hours at a time, can only carry ten pounds, is helped by her son with her housework, and has chronic lower back pain for which she takes medication daily. (R. 604, 624-27, 833-44, 864.) Given the significant limitations on plaintiff's activities, her continuing complaints of pain, and the fact that she only works out of financial desperation, the ALJ's conclusion that she experienced medical improvement as of January 1, 2012 is not supported by substantial evidence. *See Henderson v. Barnhart*, 349 F.3d

---

[2] This lapse is curious given that the Appeals Council stated in its remand order after the district court's reversal that "the lack of mental health treatment could have been a result of financial hardship." (R. 666.)

[3] The Court is not persuaded, however, that the ALJ should have assessed plaintiff's complaints of urinary frequency, an issue she raised with her doctor only twice in four years. (*See* R. 822, 841.) Given the dearth of evidence suggesting that urinary frequency was a problem for plaintiff, the ALJ's failure to assess this "impairment" was not error.

434, 435 (7th Cir. 2003) ("[T]he fact that a person holds down a job doesn't prove that he isn't disabled, because he may have a careless or indulgent employer or be working beyond his capacity out of desperation."); *Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir. 1998) ("[E]mployment is not proof positive of ability to work, since disabled people, if desperate (or employed by an altruist), can often hold a job.").[4]

The Court also agrees with plaintiff that the RFC for 2009-2011, which includes occasional stooping, is erroneous. (*See* R. 527.) The medical evidence shows that plaintiff had only 30 of 90 degrees of lumbar flexion in September 2009, and 45 of 90 degrees of lumbar flexion with 8/10 pain that was aggravated by bending in August 2010. (R. 339, 765.) The ALJ did not cite any evidence that contradicts these findings or affirmatively demonstrates that plaintiff was able to stoop in the 2009-2011 period. Absent such evidence, the RFC for that time period is unsupported.[5]

Plaintiff's next argument is that the ALJ failed properly to assess the opinion of plaintiff's treating physician, Dr. Benitez. An ALJ must give a treating physician's opinion controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must give good reasons for the weight that it assigns a treating physician's opinion. *Bates v. Colvin*, 736 F.3d 1093, 1101 (7th Cir. 2013); *Roddy v. Astrue*, 705 F.3d 631, 636-37 (7th Cir. 2013). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of

---

[4] Because the issue of medical improvement is related to the issue of whether plaintiff could, as of January 2012, perform her past relevant work as a customer service manager, the latter issue will have to be revisited on remand as well.

[5] Plaintiff also argues that the RFC should have had environmental restrictions to account for her non-severe impairment of asthma. (Br. Supp. Pl.'s Mot. Summ. J. at 15.) She does not, however, identify any evidence -- other than the asthma diagnosis itself -- that suggests any such restriction was required.

examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c).

The ALJ gave "slight weight" to Dr. Benitez's opinion because:

> [T]he treating relationship between the claimant and Dr. Benitez consisted of a total of four treatment visits, and while the claimant did report neck and back pain to Dr. Benitez, the only clinical sign Dr. Benitez identified was tenderness on flexion and turning of the neck to left side. The limitations to which Dr. Benitez opined were so out of proportion to the clinical signs she identified that it is clear that she did not base her opinion on objective evidence, but rather completed the form, taking the claimant's allegations as true.
>
> Dr. Benitez . . . did not discuss any diagnostic imaging, which showed only minimal to mild changes in both the claimant's neck and back, with no complication at the claimant's fusion site, or the clinical examinations in the record that showed the claimant had full strength, normal sensation, normal reflexes, and a negative straight leg raise, just a month prior. Moreover, the examination on March 1, 2011 was not conducted for the purpose of treatment, but rather, for the purpose of obtaining a disability form, and Dr. Benitez did not even complete the examination as the claimant was in a hurry to go home. Overall, on the face of the opinion, it appears that Dr. Benitez drafted the form based on the claimant's allegations, during an abbreviated appointment, more than six months from the claimant's most recent follow-up, based on a treatment relationship consisting of a total of four appointments, and that she did not base her opinion on the objective evidence in the record, including the physical examinations and diagnostic imaging that did not show the degree of impairment the claimant alleged.

(R. 533) (citations omitted). Though the ALJ did not explicitly address each of the regulatory factors in assessing Dr. Benitez's opinion, "his decision makes clear that he was aware of and considered many of the factors, including Dr. [Benitez's] treatment relationship with [plaintiff], the consistency of her opinion with the record as a whole, and the supportability of her opinion." *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013.) In other words, the ALJ "built an accurate and logical bridge between the evidence and his conclusion" and "provide[d] a sound explanation" for rejecting the doctor's opinion. *Id.* (quotation omitted). That is all that is

required.  *Id.*; *see Foody v. Colvin*, 169 F. Supp. 3d 804, 808 (N.D. Ill. 2015) (ALJ's failure to articulate "mandatory checklist of factors set forth in 20 C.F.R. § 404.1527(c)" not error where ALJ explained reasons for "discounting" the treating physician's conclusions and "built the requisite 'logical bridge' between the evidence and [the ALJ's] conclusion").

## Conclusion

For the reasons set forth above, the Court denies the Commissioner's motion for summary judgment [22], reverses the Commissioner's decision, and remands this case for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**　　　　　　　　　　　**ENTERED:  September 29, 2017**

**M. David Weisman**
**United States Magistrate Judge**